UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHANTÉ COLEMAN,

                Plaintiff,

-against-

IEH AUTOPARTS LLC,

                Defendant.

24-CV-3507 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), filed this complaint alleging that Defendant violated her rights. By order dated June 27, 2024, the Court directed Plaintiff to amend her complaint to address deficiencies in her original pleading.[1] Plaintiff filed an amended complaint on November 14, 2024, and the Court has reviewed it. The Court dismisses this action for the reasons set forth below.

## BACKGROUND

    In the original complaint, Plaintiff asserted claims that her employer discriminated against her based on an unspecified disability, in violation of the Americans with Disabilities Act of 1990 ("ADA"). The Court held that the original complaint failed to state a claim because Plaintiff did not specify the nature of her disability, and her allegations did not suggest that her employer took any adverse employment action against her based on a disability, perceived disability, or any other characteristic that is protected by federal employment discrimination statutes. (*See* ECF 5, at 3-5.)

---

[1] By order dated September 16, 2024, the Court granted Plaintiff a 60-day extension to file the amended complaint. (ECF 7.)

In her amended complaint, Plaintiff asserts claims under the ADA, but, as in the original complaint, she does not specify the nature of her disability or perceived disability.[2] She also asserts claims that her employer discriminated against her on the basis of her race and color in violation of Title VII of the Civil Rights Act of 1964. Plaintiff does not specify the race or color with which she identifies. The amended complaint form itself includes no facts. An attachment to the complaint states that, in April 2021, Plaintiff was hired at "Autoparts" (which the Court presumes is a reference to Defendant) in Morristown, New Jersey, and, in May 2022, she started a job at Autoparts in Chester, New York. Plaintiff alleges that in June 2022, she realized that she "was not being trained well by Kayla, a white woman." (ECF 8, at 9.) Because Kayla did not adequately train Plaintiff, "when it was time to put the parts on the shelf [Plaintiff] was confuse[d] so [she] had to ask other employees to help but it seems to [Plaintiff] if they were white employees [she] could not bother them for help." (*Id.*) As a result of Kayla's "poor training," Plaintiff "struggled to complete the processing the item into the . . . shelf." (*Id.*)

In the section of the amended complaint form to state the relief she is seeking, Plaintiff indicates that she believes she is entitled to money damages because "damage to my car property my dad car was damaged lost of family time with my children because lost of job struggling everyday to replace a car and not being able to still have my 401K because this problem." (*Id.* at 6.)

Plaintiff attaches to the complaint form 59 pages of what appears to be a daily diary of Plaintiff's experiences at work between May 25, 2022, and August 18, 2022. For example, on Tuesday, August 18, 2022, Plaintiff writes,

---

[2] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless other indicated.

> I came into the building worked on the same work from yesterday HU#472 spark plugs My login still dont work so im still using Doona login it is 5:05 pm walking in the building with T Rex he came at the same time I got out my jeep he explained to me he had to come early to talk to shawn the manager in pepboys today as the first day I seen him come at my start time T Rex explain to me tonight he wasn to be his last night he said because he want to switch to daytime because he want to teach in the day time but i said oh he then came in the building went to his locker and i seen him walk to the pepboys side to back to where shawn works 7:50pm Doona came to me said i thought you were on c-level I said no she said ok I said want me to go back to c-level she said no you can stay i then just stayed i left meeting again no label again today. Im working in filters with Hosay i have a box of plugs i'll do . . . .

(ECF 8, at 10.)

On Wednesday, July 27, 2022, Plaintiff writes,

> Im at my shift and 5:05 pm im working down near the breaks mixed pallet HU#424 with maria I'm now at the 7pm meet Doona said before the meeting put the same number to call out before then just add a 0 to the call to call out work with Maria and Susan no paper like everybody else tell me where to go long time ago Doona said dont take alot off the pallet take only two boxes at a time so other people can get the work to today i am working alone susan of Wednesdays 12:37 soon as i came from lunch Joel and Donna was at the pallet i worked alone all night 2:05 am Joel and Donna had me sign to remove a punch 12:19-12:20 am but i didn't remember putting into punches i always check the screen to get it said that day went thru like any other day that was strange to me they come together like everytime that's that they dont do with everybody that the way they make me feel uncomfortable they at a time did not do that i'm comfortable because im alone in i feel like i have to help myself. Doona also asked me not to walk thru the Bulk area all of a sudden i been doing that to stay away from everybody else and because i don't feel wanted here so i figured that might help stop them from bullying me from people lying on me i don't know who told what but its a group so i know they will help each other the share work instructions to each other they never told me a lot of information which was the reason i struggle in the task a few times Doona knows that whatever i do wrong is because lack of training she said dont cut thru I know you like walking on what side i said no problem tonight Maria said she want to work with me she is feeling uncomfortable.

(*Id.* at 22.)

On June 26, 2022,

> CF02 start of shift im getting a cart Deana waved her hand to tell Krissadea to come her way as she did that Krissade turned and looked my way i went to CF02 where HU#557 wasi walked with cart to aisle 23 Krissadea rolled her eyes. I was at aisle 22 HU#541 Krisadea smiled and rolled her eyes Kayla comes working

3

> with krissadea on the same cart after 10:20 pm maria said not to touch Krissadea and Deana pallet 10:43pm i found Doona to let her know what was going on she didn't want to hear what I had to say she showed me she didn't want to hear it and she said well maybe it's bulk she always cover for them i couldn't understand what cause her to never want to listen i felt she ignored me and through her hands up then told me to go to CF02 HU#557 Doona told me your not being productive i was only looking for a cart to do my work like everybody else would she said don't leave the warehouse i was looking for Doona because i didn't see her in the warehouse so i looked in the lunch room that all this is the day Krisasadea just let the door just close in my face we clocked out around the same time.

(*Id.* at 47.)

## DISCUSSION

**A.     Claims under the ADA**

Plaintiff's claims under the ADA in the amended complaint suffer from the same deficiencies as her ADA claims in the original complaint. That is, nowhere in the complaint does she specify her disability, and her allegations do not suggest that her employer took any adverse employment action against her based on a disability or perceived disability. (*See* ECF 5, at 4-5.) The Court therefore dismisses Plaintiff's claims under the ADA for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.     Claims under Title VII**

Plaintiff also asserts claims in the amended complaint under Title VII that her employer discriminated against her on the basis of her race and color. Title VII provides that

> [i]t shall be an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e-2(a).

Title VII prohibits employers from mistreating an individual because of the individual's protected characteristics, *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007), or retaliating against

4

an employee who has opposed any practice made unlawful by those statutes, *see Crawford v. Metro. Gov't*, 555 U.S. 271, 276 (2009) (holding that conduct is protected when it "confront[s]," "resist[s]," or "withstand[s]" unlawful actions). Mistreatment at work that occurs for a reason other than an employee's protected characteristic or opposition to unlawful conduct is not actionable under these federal antidiscrimination statutes. *See Chukwuka v. City of New York*, 513 F. App'x 34, 36 (2d Cir. 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). At the pleading stage in an employment discrimination action, "a plaintiff must plausibly allege that (1) the employer took adverse employment action against [her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87.

As a preliminary matter, although some of her allegations suggest that she may identify as African American, Plaintiff does not specify her race or color. The gravamen of Plaintiff's Title VII claim appears to be that "people of the same race treat me like i dont belong here." (ECF 8, at 17.) She asserts that other employees "look at me like im trouble because of my race." (*Id.* at 36.) However, the few scattered references to race in the amended complaint do not suggest that Plaintiff's employer took an adverse employment action against her because of her race or color. For example, Plaintiff references an individual who is "the same race as everybody treating me unfairly," and alleges that she "seen him peeking over Shawn to see me it was weird he then peeked to the side of shawn as well i kept walking to my assignment." (*Id.* at 12.) In another incident, Plaintiff alleges that Doona gave an "African American guy" and a "female of [Doona's] own race" a tour of the warehouse, but Doona did not give Plaintiff a tour of the

warehouse. (*Id.* at 15.) In another example, Plaintiff describes an incident in which Doona did not make eye contact with Plaintiff as Plaintiff walked by her, but then Doona "interact[ed] with" a "guy as the same race as her." (*Id.* at 17.)

The allegations in the amended complaint do not suggest that Plaintiff's employer took an adverse employment action against her because of her race or color. The Court therefore dismisses Plaintiff's Title VII claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.    State law claims**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D.    Further leave to amend is denied**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). In the

6

original complaint, Plaintiff asserted claims under the ADA and, in the amended complaint, she brings claims under the ADA and Title VII. The elements of an ADA and a Title VII claim are the same, and the deficiencies in Plaintiff's pleading of both claims are the same. Since the Court has already granted Plaintiff leave to cure those deficiencies, no further leave to amend is required, and the Court therefore declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Court dismisses this action for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter judgment.

SO ORDERED.

Dated:   April 14, 2025
         New York, New York

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              Chief United States District Judge